UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
)  **JUDGE RICHARD L. SPEER**
James/Jessie Osborne )
) Case No. 07-32263
Debtor(s) )
)

## DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss Case for abuse pursuant to 11 U.S.C. § 707(b)(1). The Debtors filed an objection thereto. A Hearing was held on this matter after which time the Court took the matter under advisement so as to afford time to thoroughly consider the issues raised by the Parties. The Court has now had this opportunity, and finds, for the reasons now explained, that the Motion of the United States Trustee should be Granted.

## FACTS

On May 29, 2007, the Debtors, James and Jessie Osborne, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). The Debtors have no other dependents. At the time they filed their petition, the Debtors, due to marital problems, were living apart. With regards to this arrangement, both of the Debtors put forth that any reconciliation is unlikely, and thus each of them will need to continue maintaining separate households.

Both of the Debtors are retired from the Ford Motor Company. For income, the Debtors each draw a pension and receive social security benefits in these respective amounts: Mr. Osborne receives $3,504.66 in total monthly income; Mrs. Osborne receives $2,326.69 in total monthly income. Against this gross monthly income, which together totals $5,831.35, the Debtors reported

In re James/Jessie Osborne
Case No. 07-32263

necessary, monthly expenses of $6,003.24, thus leaving a shortfall of $171.89 in the Debtors' monthly budget. Included among the Debtors' reported expenses were the following items:

| | |
|---|---|
| $2,011.00 | Mortgage |
| $400.00 | Electricity and Heating Fuel |
| $151.00 | Cable |
| $128.00 | Telephone |
| $500.00 | Transportation (not including car payments) |
| $1,200.00 | Rent and Utilities to maintain a separate household. |

In the schedules accompanying their bankruptcy petition, the Debtors set forth assets totaling $318,565.00. The Debtors' primary assets consisted of their home, with an assigned value of $300,000.00, and two cars worth $15,930.00. In their statement of intention, the Debtors set forth that they intended to surrender their residence. Against their assets, the Debtors set forth secured debts of $262,629.24, consisting entirely of two mortgages encumbering their residence; and unsecured debts totaling $88,855.92, arising primarily from credit-card transactions.

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

Page 2

**In re James/Jessie Osborne**
**Case No. 07-32263**

The Motion of the UST to Dismiss is brought pursuant to 11 U.S.C. § 707(b)(1) which provides:

> After notice and a hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.

It is the position of the UST that the Debtors' case should be dismissed for abuse under this provision because they have the ability to pay their unsecured debts. (Doc. No. 23).

In determining whether the granting of relief would be an abuse within the meaning of § 707(b)(1), two alternative standards are prescribed. First, in § 707(b)(2) it is provided that, under a 'means test' formula, abuse may be presumed in instances where an ability to pay threshold is exceeded. Second, § 707(b)(3) sets forth that, even if no presumption of abuse arises, a court may still dismiss a case based upon the particular circumstances of the case.

Based upon the UST's assertion that the Debtors have the ability to repay their debts, at issue in this matter is the applicability of § 707(b)(3). In particular, subparagraph (B) of § 707(b)(3) which provides:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> > (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

Page 3

In re James/Jessie Osborne
Case No. 07-32263

By prescribing that abuse may be determined by reference to the 'totality of the circumstances,' this provision allows a court to conduct a subjective, case-by-case, analysis of a debtor's financial situation. *In re Wilson*, 356 B.R. 114, 121 (Bankr. D.Del. 2006). Whether, as argued by the UST, a debtor has the ability to repay their debts is a primary, although not the only, consideration potentially bearing on whether the totality of the debtor's financial circumstances will be found to demonstrate abuse under § 707(b)(3).[1]

A frequently utilized measure, when determining whether a debtor has the ability to repay their debts, is to ascertain whether, under a hypothetical Chapter 13 repayment plan, the debtor could repay a meaningful percentage of his or her unsecured debts. *In re Behlke*, 358 F.3d at 434-35; *In re Glenn*, 345 B.R. 831, 836 (Bankr. N.D.Ohio 2006). Within this framework, the Debtors, pointing to those budgetary figures provided in their schedules, which show that they have a shortfall of $171.89 in their monthly budget, maintain that the UST's assessment of their ability to pay is incorrect. The UST, however, argues that the deficit in the Debtors' budget is based upon excessive

---

[1] Citing to the decision rendered by the Sixth Circuit Court of Appeals in *In re Krohn*, 886 F.2d 123 (6th Cir.1989), this Court has explained:

> When determining whether the dismissal of a Chapter 7 case is proper under the 'totality of the circumstances' standard of § 707(b)(3), a primary focus of the court will be on the debtor's 'need' for such relief. Where there is a want of need dismissal for abuse will be proper. A debtor's 'need' is broadly measured by looking to whether his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. An often used indicator in this regard is whether, as argued by the UST, a debtor has the ability to repay their debts, particularly whether the debtor has the ability to fund a Chapter 13 plan of reorganization.

*See In re Wadsworth*, Ch. 7 Case No. 07-32407, 2007 WL 4365374 (Bankr. N.D Ohio 2007) (internal citations and quotations omitted).

Page 4

**In re James/Jessie Osborne**
**Case No. 07-32263**

expenditures which should not be allowed. Of particular concern, the UST set forth in its Motion to Dismiss that the Debtors "[h]ousing expenses of more than $3,000.00 per month in the case at bar are not reasonable." (Doc. No. 23. at pg. 3).

Whether a debtor would be able to make, under a Chapter 13 plan of reorganization, a meaningful remuneration to his or her unsecured creditors is primarily contingent upon the amount of "disposable income" the debtor has available to pay into the plan. The term "disposable income" is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2); *In re Pier*, 310 B.R. 347, 353 (Bankr. N.D.Ohio 2004). This assessment, as to the amount of 'disposable income' available, however, is not dependent on those financial figures provided by a debtor. Rather, "in its role as the trier-of-fact, the Court is under a duty to scrutinize a debtor's expenses, and make downward adjustments where necessary, so as to ensure that the debtor's expenses are reasonable. Similarly, when determining a debtor's 'disposable income,' a court may impute income to the debtor when it would be equitable to do so–*e.g.*, when the debtor is voluntarily underemployed." *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007).

In assessing the Debtors' disposable income, the position taken by the UST, regarding the excessiveness of the Debtors' housing expenses, is facially correct. Allocating more than $3,000.00 per month for housing, specifically $3,611.00, is not ordinarily reasonable for two debtors who claim an inability to repay their debts. *See In re Wadsworth*, Ch. 7 Case No. 07-32407, 2007 WL 4365374 (Bankr. N.D Ohio 2007) (case dismissed for abuse; allocating $2,646.00 for housing not reasonable). The Debtors, however, while acknowledging that their budgetary allocations for their housing expenses are out of the ordinary, asked that the Court take into account these two particular facets of their case: (1) they are separated and therefore must maintain two separate households; and (2) their marital situation is unlikely to improve.

Page 5

In re James/Jessie Osborne
Case No. 07-32263

Consistent with the Debtors' position, allowance may be given in a 'disposable income' analysis for those extra expenses incurred as the result of a breakdown in the marital relations between two debtors. In this respect, the reasonableness of a debtor's expenses, when assessing their 'disposable income,' is necessarily a fact-specific inquiry which should take into consideration the particularities of each debtor's situation. Therefore, unlike the 'means test' of § 707(b)(2), which sets absolute caps on a debtor's permissible expenses, doing the same for § 707(b)(3) is neither possible nor proper. Simply put, what is excessive for one debtor for purposes of § 707(b)(3) may be reasonable for another. *See In re Cameron*, 243 B.R. 117, 124 (M.D. Ala. 1999) (disposable income is subjectively calculated).

Yet, even granting the Debtors, due to their marital situation, a greater housing allowance than what would otherwise be permissible for similarly situated debtors does not change this Court's estimation that the Debtors' overall housing expenses in this case are grossly excessive. Allocated evenly between the Debtors, whom have no dependents, their $3,611.00 monthly housing budget amounts to more than $1,800.00 for each individual. Such a large, per capita housing expense necessarily requires a showing that it is a necessary allocation for the debtor's health and welfare. However, no such showing was made by the Debtors.

To be sure, Mrs. Osborne, as she pointed out, will need to incur rental expenses when she moves from the residence the Debtors are surrendering. And as a matter of course, debtors who surrender their residence are still entitled to incur reasonable costs to obtain adequate shelter. *In re Oot*, 368 B.R. 662, 667 (Bankr. N.D.Ohio 2007) ("shelter and transportation expenses are allowed as a matter of course"). Yet, insofar as it concerns a debtor's health and welfare, the Court cannot see any logical connection between surrendering property and the subsequent need to incur a substantial expense. In this way, this Court has every confidence that Mrs. Osborne will be able to secure an acceptable place to live at a cost substantially below $1,800.00 per month.

Page 6

In re James/Jessie Osborne
Case No. 07-32263

Additionally, beside their housing, the reasonability of other expenditures put forth by the Debtors are questionable. First, considering that both the Debtors are retired, with no dependents, a $500.00 monthly expense for transportation, which is exclusive of any car payments, does not seem necessary. Similarly, allocating $151.00 for cable television and $128.00 for telephone service falls outside the orbit of what one would expect of persons who are making a good faith effort to put their financial situation back in order. In this way, while bankruptcy does not require that a debtor adopt a completely spartan existence, debtors will not be permitted to continue, at the expense of their creditors, to maintain the lifestyle that drove them to bankruptcy. *In re Webb*, 262 B.R. 685, 692 (Bankr. E.D.Tex. 2001).

It is realized that there are still unknowns in this matter, making it impossible, at this particular juncture, to state with certainty the amount of money that could be made available to the Debtors' unsecured creditors. For example, with the Debtors surrendering their marital residence, their unsecured debt burden could increase if a deficiency arises when their property is sold, thereby lowering any payout to all unsecured creditors. However, when looking at the whole picture, this much is still clear: the Debtors, by tightening their financial belt, have more than ample leeway in their monthly budget to allow for a meaningful remuneration to their unsecured creditors.

It is, therefore, the holding of this Court that the Debtors have, based upon the 'totality of the circumstances' of § 707(b)(3), the ability to repay their debts. As a result, granting relief to the Debtors under Chapter 7 of the United States Bankruptcy Code constitutes an abuse for purposes of § 707(b)(1), thereby requiring the Dismissal of this case. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 7

In re James/Jessie Osborne
Case No. 07-32263

    Accordingly, it is

    **ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Friday, January 25, 2008, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

    **IT IS FURTHER ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

    Dated: January 14, 2008

    _/s/ Richard L. Speer_
    Richard L. Speer
    United States
    Bankruptcy Judge

Page 8

# CERTIFICATE OF SERVICE

Copies were mailed this 14th day of January, 2008, to the following parties:

James W. Moennich
35765 Chester Rd
Avon, OH 44011

James D Osborne
222 Jane Phillips Rd
Oneida, TN 37841

Jessie M Osborne
9019 Harrison Rd
Wakeman, OH 44889

Sarah A. Nation
3116 Bardshar Rd.
Sandusky, OH 44870

Louis J Yoppolo
300 Madison Ave, #1200
Toledo, OH 43604

Office of the U.S. Trustee
c/o Dean Wyman
201 Superior Ave, East
#441
Cleveland, OH 44114


/s/ Robert C.W. Birmingham
Deputy Clerk, U.S. Bankruptcy Court